FILED
RICHARD W. NAGEL
CLERK OF COURT

2016 DEC 29 PM 1:55

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Alan Brosz, derivatively on behalf
of Big Lots, Inc.,

               Plaintiff,

    v.

Steven Fishman, *et al.*,

               Defendants.

Case No. 1:13–cv–753
Judge Michael H. Watson
Magistrate Judge Jolson

### OPINION AND ORDER

Defendants move to dismiss the amended verified shareholder derivative

complaint ("amended complaint"), or in the alternative, to consolidate this case

with case number 2:12–cv–445. ECF No. 42. For the reasons that follow, the

Court **DENIES** the motion to dismiss and **ORDERS** that this case be

consolidated with case number 2:12–cv–445.

## I.    BACKGROUND

This case is one of several suits initiated by various aggrieved

shareholders against nominal defendant Big Lots, Inc. ("Big Lots" or "the

Company") and certain of its current and former corporate officers ("Individual

Defendants"). Shareholder Alan Brosz ("Plaintiff") alleges that, during a period of

time in 2012, the Individual Defendants engaged in a scheme to inflate the value

of Big Lots' stock by concealing from the public the true financial condition of the

Company while at the same time selling large portions of their personal holdings

of the stock at inflated value.  Plaintiff further alleges that the Individual

Defendants caused the Company to repurchase a large amount of its stock at

inflated value thus constituting corporate waste.

### A.    Procedural History

Plaintiff filed this action on October 18, 2013.  At that time, three other

shareholder derivative lawsuits involving similar allegations had been filed

against Big Lots. Those three cases are consolidated, with the lead case being

2:12–cv–445 ("Consolidated Cases").

In his complaint, Plaintiff alleged that he had standing to bring this

derivative action because he had issued a demand letter to the Company's

Executive Board (the "Board"), in which he asked the Board to investigate the

Individual Defendants' sales of their own stock.  Plaintiff requested that the Board

commence civil action against the Individual Defendants on the Company's

behalf.  This demand distinguishes Plaintiff's case from the Consolidated Cases,

in which the plaintiffs argue that demand would have been futile.

The Board rejected Plaintiff's demand.  In its response letter, the Board

stated that it had appointed a special committee (the "Committee") to conduct an

independent investigation of the allegations set forth in Plaintiff's letter.  The

response concludes: "the charges in the Demand Letter are unsupported . . .

none of the current or former officers or directors named in the Demand Letter

breached any fiduciary duties owed to the Company or otherwise violated

applicable law."  ECF No. 41-2, at 1.  The Board therefore "determined to reject

the demand to commence civil action against the individuals named in the Demand Letter." *Id.*

Plaintiff then filed the present shareholder derivative lawsuit against nominal defendant Big Lots and the Individual Defendants.  Plaintiff asserted claims for breach of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, corporate waste, and violations of Ohio Revised Code § 1333.61 *et seq.*

Defendants moved to dismiss the complaint.  In their motion, Defendants argued that the business judgment rule protects the Board's rejection of Plaintiff's demand.  Defendants specifically argued that Plaintiff failed to allege facts sufficient to support the inference that the Board's rejection of Plaintiff's demand was wrongful, fraudulent, or arbitrary, or is the result of bad faith or bias and, as a result, Plaintiff failed to overcome the presumption of the business judgment rule and therefore lacked standing to file a derivative lawsuit.

The Court agreed with Defendants.  In its Opinion and Order dated April 14, 2015, the Court granted Defendants' motion to dismiss and found that Plaintiff lacked derivative standing.  Op. Order, ECF No. 35.  Although the Court acknowledged that the Board's letter rejecting Plaintiff's demand "is not extremely detailed," it stated: "it is Plaintiff's burden to allege facts establishing that the response was "wrongful, fraudulent, or arbitrary, or is the result of bad faith or bias."  Op. Order, ECF No. 35, at 12.  Plaintiff's allegations on this issue—two paragraphs of conclusory allegations stating that the Board acted

improperly and with a lack of diligence and bad faith—did not satisfy this standard. The Court noted that Plaintiff could have requested, but did not, information from Big Lots through a shareholder records request to support his allegation that the Board acted wrongfully in rejecting his demand.

After concluding that Plaintiff lacked standing to pursue this action, the Court nevertheless analyzed the merits of each substantive claim. The Court noted that Count VII (corporate waste) could state a claim for relief with more detailed allegations about the timing of certain stock repurchases that Big Lots made. The remaining claims, however, did not contain sufficient allegations of injury. As a result, the Court dismissed Count VII without prejudice and dismissed the remaining claims with prejudice. The Court gave Plaintiff permission to move to amend the complaint with regard to the specific issues of "(1) whether Defendants wrongfully declined to initiate litigation in response to Plaintiff's demand letter, and (2) Count VII." Op. Order, ECF No. 35, at 24.

Plaintiff filed an amended complaint on August 17, 2015. ECF No. 41. The amended complaint asserts a single claim for corporate waste.

The amended complaint also contains new allegations relevant to derivative standing. First, the amended complaint states that Plaintiff made a request to inspect Big Lots' books and records for the purpose of evaluating the Board's and the Committee's actions in response to Plaintiff's demand letter. Am. Compl. ¶ 12, ECF No. 41. Big Lots produced 154 pages of documents in

response to the request; however, the "overwhelming majority of this material was redacted." *Id*. ¶ 13.

Regarding the non-redacted information, Plaintiff identifies the following in support of his theory that the Board wrongfully rejected the Demand:

- That "[t]he Special Committee inexplicably failed to attempt to interview even a single representative from the U.S. Department of Justice or the U.S. Securities and Exchange Commission (the "SEC"), despite the fact that the respective investigations by the DOJ and SEC were both specifically referenced by Plaintiff in the Demand." Memo. Opp., ECF No. 43, at 6.

- "[M]embers of the Special Committee knew the individuals whose conduct they were charged with investigating for over twenty-five years" but, after the Special Committee members disclosed this fact to the Board, "the evaluation of the Special Committee Members' independence ended then and there, with no further analysis or discussion regarding the nature of those relationships." *Id*. at 8.

- "[T]here is reason to doubt that the Special Committee's own counsel, Squire Sanders (US) LLP . . . was conflict free" due to Squire Sanders' representation in a matter adverse to one of the Special Committee members' employers. *Id*. at 9 n.5.

Defendants now move to dismiss the amended complaint. In so moving, Defendants concede that Plaintiff adequately pled the elements of Count VII. Defendants argue, however, that Plaintiff still failed to allege that the Board's rejection of the Demand was wrongful such that Plaintiff has derivative standing to pursue this claim on Big Lots' behalf. Defendants also argue that the amended complaint should be dismissed as duplicative in favor of the earlier-filed Consolidated Cases.

In the alternative to their request to dismiss this action, Defendants move to consolidate this action with the Consolidated Cases.  Plaintiff does not oppose this request.

The Court proceeds to address the parties' arguments.

## II.    STANDARD OF REVIEW

Defendants move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dismissal under Rule 12(b)(6) is proper if the complaint fails to state a claim upon which relief can be granted.  Although Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must also "contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory."  *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012) (quotations and citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Finally, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it] [is] not bound to accept as true a legal

conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

## III.   ANALYSIS

### A.   Derivative Standing

The first question for the Court is whether the amended complaint adequately pleads derivative standing. The Court must examine whether Plaintiff pled sufficient facts to overcome the presumption that the business judgment rule protects the Board's decision to reject his demand.

Ohio law provides that the business judgment rule protects corporate directors faced with a shareholder demand to bring a lawsuit on the corporation's behalf.[1] The Sixth Circuit has explained this principle as follows:

> In Ohio, the "directors of a corporation are charged with the responsibility of making decisions on behalf of the corporation and are the proper parties to bring a suit on behalf of the corporation or, in their business judgment, to forego a lawsuit." *Drage v. Proctor & Gamble*, 119 Ohio App. 3d 19, 694 N.E.2d 479, 482 (Ohio Ct. App. 1997). "Under Ohio law, it is presumed that any action taken by a director on behalf of the corporation is taken in good faith and for the benefit of the corporation." *Id.* (citing Ohio Rev. Code §1701.59(C)(1)) (emphasis added). Because the "board of directors has the primary authority to file a lawsuit on behalf of the corporation," the shareholders "may make a demand on the directors to bring a suit on behalf of the corporation, but no shareholder has an independent right to bring suit unless the board refuses to do so and that refusal is wrongful, fraudulent or arbitrary, or is the result of bad faith or bias on the part of the directors." *Id.*

_____

[1] As stated in the Court's April 14, 2015, Opinion and Order, Ohio law applies to this action because Big Lots is incorporated in Ohio. *See* ECF No. 35, at 11.

> The demand requirement is essentially a requirement that the shareholder exhaust his or her intracorporate remedies before going to court with a derivative suit. The corporate management must be given the first opportunity to institute the litigation since, as a general principle, the responsibility for determining whether a corporation should use the courts to enforce a cause of action is, like other business questions, ordinarily a matter of internal management left to the discretion of the directors.

> *Carlson v. Rabkin*, 152 Ohio App. 3d 672, 789 N.E.2d 1122, 1128 (Ohio Ct. App. 2003) (footnotes omitted).

*In re Ferro Corp. Deriv. Lit.*, 511 F.3d 611, 617–18 (6th Cir. 2008).

It is clear from this authority that, if a board refuses a shareholder's demand to bring suit, the shareholder generally cannot bypass the board and file suit him- or herself. *See id.* The shareholder must prove that the board's refusal was "wrongful, fraudulent or arbitrary, or is the result of bad faith or bias" in order to maintain derivative standing. *Id.*

The more difficult question is the level of factual detail that the shareholder must allege in his or her complaint. Federal Rule of Civil Procedure 23.1 provides that a plaintiff must "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors or comparable authority," but is silent as to what must be alleged regarding the board's refusal. As noted in the Court's April 14, 2015, Opinion and Order, Ohio law is sparse on this issue.

Both parties cite Delaware law throughout their briefs and, specifically, the Delaware Chancery Court's decision in *Grimes v. DSC Comms. Corp.*, 724 A.2d 561 (Del. Ch. 1998), as setting forth the applicable standard. That is: "[a] stockholder wishing to pursue a derivative action after a board of directors has

refused a pre-suit demand must allege with particularity facts sufficient to create a reasonable doubt that the corporation's board wrongfully refused the demand." 724 A.2d at 565. Because the parties agree that Ohio courts would apply this standard, and because Ohio corporate law mirrors Delaware corporate law on this issue, the Court will apply the "reasonable doubt" standard to determine whether Plaintiff alleges sufficient facts in this case. *Compare In re Ferro*, 511 F.3d at 611 (applying Ohio law and explaining that the business judgment rule applies to a board's refusal of a shareholder demand) *with Scattered Corp. v. Stock Exchange, Inc.*, 701 A.2d 70, 73 (Del. 1997) (applying Delaware law and noting that, because the business judgment rule applies to a board's refusal of a shareholder demand, the shareholder seeking to file a derivative lawsuit must allege facts that create a "reasonable doubt" that the board acted in accordance with the business judgment rule) (quoting *Levine v. Smith*, 591 A.2d 194, 200–01 (Del. 1991)).

The Court is mindful that its inquiry about the reasonableness of the Board's refusal, as alleged in the amended complaint, "is not into the substantive decision of the board, but rather is into the procedures employed by the board in making its determination." *Barovic v. Ballmer*, 72 F. Supp. 3d 1210, 1215 (W.D. Wash. 2014) (hereinafter "Microsoft") (quoting *In re PSE & G Shareholder Litig.*, 801 A.2d 295 (N.J. 2002)). Although Plaintiff conceded the Board's independence by making the demand, the Court still must examine whether the Board *acted* independently in responding to the same. *See City of Orlando*

*Police Pension Fund v. Page,* 970 F. Supp. 2d 1022, 1029 (N.D. Cal. 2013) (hereinafter "Google") (discussing *Grimes* and *Scattered*).

This inquiry must be viewed in context with the general principle that a board cannot insulate its investigation from scrutiny. *See id.* at 1030. As this Court noted in its April 14, 2015, Opinion and Order, it is Plaintiff's burden to gather all information available to him regarding the Board's refusal and articulate the specific information that casts doubt upon the Board's judgment in refusing his demand. Op. Order, ECF No. 35, at 13 (citing Ohio Rev. Code. § 701.37(C)); *see also Scattered*, 701 A.2d at 78 (affirming the Chancery Court's decision to grant a motion to dismiss in a wrongful refusal case and noting that the plaintiff could have, but did not, inspect the corporation's books and records). But when a plaintiff exhausts available remedies and still has minimal access to the reasons underlying the board's decision, that fact raises a concern about the board's good faith and reasonableness in rejecting the demand. *See Google*, 970 F. Supp. 2d at 1030–31.

Such secrecy is particularly troubling when it is the wrongfulness of certain conduct—and not the factual issue of whether certain conduct took place—that the board is investigating. Stated differently, a board's refusal to explain its conclusion that certain conduct was not wrongful raises more unanswered questions than a board's factual conclusion that certain conduct did not occur. In *Google*, for example, the court was hesitant to apply the business judgment rule when the company had acknowledged the conduct at issue (Google's

practice of permitting unlawful pharmaceutical advertisements on its site) but the board's special committee found no wrongdoing by the directors.  *See id*. at 1032.  The Chancery Court in *Scattered*, on the other hand, was more willing to apply the business judgment rule when the board found the shareholder's allegations of bribery and improper hiring practices "to be factually unsupported." *Scattered Corp. v. Chicago Stock Exchange, Inc*., No. 14010, 2996 WL 417507, at *4 (Del. Ch. Jul 12, 1996), *aff'd*, 701 A.2d 70.

Other facts that weigh in favor of finding "reasonable doubt" at the motion to dismiss stage include the board's failure to interview potentially adverse witnesses in its investigation.  *See, e.g., Google*, 970 F. Supp. 2d at 1032 (noting that the board's special committee failed to interview specific witnesses that the plaintiff identified in his demand).  The *Microsoft* court found this factor particularly compelling and denied a motion to dismiss for the sole reason that the board had not interviewed anyone outside the company regarding the violation of a settlement agreement, even though European Union regulators had conducted their own investigation into the violation.  72 F. Supp. 3d at 1216. Conversely, a board's willingness to interview potentially adverse witnesses suggests that its decision should not be second guessed.  *See, e.g., Scattered*, 701 A.2d at 76 (noting that a special committee had interviewed twenty-five people "as well as other people the plaintiffs had suggested would corroborate their claims of wrongful conduct").

Here, having considered the factors discussed above, the Court concludes that the amended complaint adequately pleads derivative standing. The allegations in this case are based on public information; namely, the Individual Defendants' sales of stock and a publicly-announced share repurchase program. The Board's rejection letter does not dispute that these events occurred. Rather, in rejecting Plaintiff's demand, the Board offered only the conclusory statement that this conduct did not breach any fiduciary duties owed to the Company. *See* ECF No. 41-2. Plaintiff alleges that the 154 pages of documents that the Company produced in response to his inspection request—the "overwhelming majority" of which are redacted—do little to explain the Board's process in investigating the demand and reaching its conclusion. ECF No. 43, at 12. Necessarily taking these allegations as true, the Board has "effectively insulated its investigation from any scrutiny," *Google*, 970 F. Supp. 2d at 1030, which, combined with the nature of the allegations in this case, raises a legitimate concern about the Board's investigation.

The Board's failure to interview anyone outside the Company only compounds this concern. Plaintiff's demand letter references an SEC investigation into one of the Individual Defendants' sales of stock, *see* ECF No. 41-1, at 8, but the Board did not interview anyone from the SEC. Although this failure is not as notable as those in *Google* and *Microsoft*, in which the companies had admitted wrongdoing to outside agencies, it still weighs against applying the business judgment rule at this stage of the litigation.

The Court also agrees with Plaintiff that the Board's handling of a potential conflict of interest weighs, albeit slightly, against applying the business judgment rule.  The fact that two members of the Committee had known two of the Individual Defendants for twenty to twenty-five years may well be incidental to the Committee's recommendation to reject Plaintiff's demand.  But at this preliminary stage, the allegation that the Committee took no documented steps to discern the nature of those relationships and whether they would affect the Committee's independence weighs against a finding that the Board acted independently and in good faith.

On balance, the Court finds that Plaintiff has pled reason to doubt the Board's business judgment in rejecting his demand.  The Court accordingly denies Defendant's motion to dismiss for lack of derivative standing.

### B.    Duplicative Actions

Defendants next argue that this action should be dismissed in favor of the earlier-filed Consolidated Cases.  Defendants cite the general principle that courts should "avoid duplicative litigation" in support of their position.  ECF No. 42, at 11.  Because the Consolidated Cases advance the same theory of recovery as the present case, Defendants argue, consolidation would add nothing to the litigation.

Defendants' argument is not compelling in the specific context of shareholder derivative suits.  Although this case and the Consolidated Cases advance the same theory of recovery on Big Lots' behalf, courts have held that

one shareholder's decision to make a demand does not prevent another

shareholder from asserting demand futility.  *See, e.g., In re ITT Corp. Deriv.*

*Litig.*, 588 F. Supp. 2d 502, 509 (S.D.N.Y. 2008).  As such, where shareholders

act independently in bringing suits based on different theories of derivative

standing, it is appropriate to consolidate those cases rather than dismiss one of

them as duplicative.  *Id.*

There is no indication in this case that Plaintiff acted in concert with the

plaintiffs in the Consolidated Cases.  The Court accordingly denies Defendants'

motion to dismiss on this ground.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to

dismiss.  The Clerk is **DIRECTED** to consolidate this case with *Lamb v. Berger*,

Case No. 2:12–cv–445.

As a final matter, the Court notes that Plaintiff filed a redacted Amended

Complaint, ECF No. 41, but did not move for leave to file the unredacted version

under seal.  The unredacted version therefore is not reflected on the docket.

Plaintiff is **ORDERED** to file, within fourteen days of the date of this Opinion and

Order, a motion setting forth the reasons that the redacted portions of the

Amended Complaint should be filed under seal.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**